IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF VIRGINIA

ROANOKE DIVISION

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>vs.<br><br>Brandon Scott Thomas,<br><br>    Defendant. | 7:16-cr-17 |

PROCEEDINGS HELD BEFORE

THE HONORABLE ELIZABETH K. DILLON, JUDGE

June 17, 2016
1:52 p.m. to 2:55 p.m.
Roanoke, Virginia
Guilty Plea
Probation:  Lollie Burns

Appearances:
   United States Attorneys Office
   PO Box 1709
   Roanoke, Virginia  24008
   BY:  Laura Day Rottenborn, AUSA
   540-857-2250
   Counsel on behalf of the government

   Terry N. Grimes, PC
   320 Elm Avenue
   Roanoke, Virginia  24016
   BY:  Terry N. Grimes, Esq.
   540-982-3711
   Counsel on behalf of the defendant

REPORTED BY:     JANELLE A. MUNDY
        PO Box 6015
        Christiansburg, VA 24068
        (540) 312-9873

1   (June 17, 2016, 1:52 p.m.)

2

3                    P R O C E E D I N G S

4

5            THE COURT:  Good afternoon.  Ask Ms. Dozer

6   to please call the case.

7            MS. CLERK:  <u>United States of America v.</u>

8   <u>Brandon Scott Thomas</u>, criminal action number 7:16-cr-17,

9   defendant number four.

10           THE COURT:  Ms. Rottenborn, is the United

11  States ready to proceed?

12           MS. ROTTENBORN:  Yes, Your Honor.

13           THE COURT:  Mr. Thomas ready to proceed?

14           MR. GRIMES:  Yes, Your Honor.

15           THE COURT:  I understand that Mr. Thomas is

16  considering entering a guilty plea at this hearing to

17  counts one, six, eight, nine and 13 to the second

18  superseding indictment pursuant to a written plea

19  agreement.  Is that right?

20           MR. GRIMES:  That's correct, Your Honor.

21           THE COURT:  Ms. Rottenborn, have the victims

22  of the offense been notified of the hearing and the

23  right to attend?

24           MS. ROTTENBORN:  Yes, Your Honor.  To the

25  extent that notification has been possible it has been

1  made.  In the event it's not possible, our reasonable

2  best efforts have been applied.

3          THE COURT:  Any victims who want to be

4  heard?

5          MS. ROTTENBORN:  Not to my knowledge, Your

6  Honor.

7          THE COURT:  Thank you.  Mr. Grimes, if you

8  and Mr. Thomas would approach the podium, please.  In a

9  few moments, Mr. Thomas, you will placed under oath so I

10  can ask you some questions.  The questions will help me

11  make sure you understand what this proceeding is about.

12  To make sure you understand what a plea of guilty means

13  with regard to your rights and what rights you are

14  giving up if you plead guilty; the consequences of your

15  guilty plea in other words.

16          If you do not understand any of my questions

17  or do not agree with something that's said, I want you

18  to tell me.  Will you do that?

19          THE DEFENDANT:  Yes, ma'am.

20          THE COURT:  It's very important that you

21  understand and that you let me know if you disagree with

22  something that's said.  I want to also make sure you're

23  entering this plea voluntarily.  If you don't tell me

24  that you don't understand or if you disagree, I'm going

25  to assume that you agree with what is said and you

1    understand what is said.

2              Now Mr. Grimes is here with you today.  At

3    any time you may -- just let me know, and we'll stop the

4    proceedings.  You may consult with him and ask him any

5    questions you have.

6              THE DEFENDANT:  That's fine.

7              THE COURT:  As you have been doing, I need

8    you to speak up, because we are making a record of this

9    proceeding.  So make sure you just don't nod your head

10   and speak up so everyone can hear you.  Will you do that

11   for me?

12             THE DEFENDANT:  Yes, ma'am.

13             THE COURT:  Please administer the oath, Ms.

14   Dozer.

15             BRANDON SCOTT THOMAS, having been first duly

16   sworn, was examined and testified as follows:

17             THE COURT:  All right.  Mr. Thomas, do you

18   understand that you are now under oath.  If you answer

19   any questions falsely, you can be prosecuted for perjury

20   or making false statements and your answers can be used

21   against you.  Do you understand that?

22             THE WITNESS:  Yes, ma'am.

23             THE COURT:  I'm going to ask you some

24   questions about your general background; questions to

25   determine whether you're competent to enter a plea today

1  and understand what you're doing.  First, what is your

2  full name?

3           THE WITNESS:  Brandon Scott Thomas.

4           THE COURT:  Where were you born?

5           THE WITNESS:  Roanoke, Virginia.

6           THE COURT:  You obviously speak English and

7  understand the English.  Can you read and write?

8           THE WITNESS:  Yes, ma'am.

9           THE COURT:  Can you hear me clearly today?

10          THE WITNESS:  Yes, ma'am.

11          THE COURT:  How old are you?

12          THE WITNESS:  Twenty-five years of age.

13          THE COURT:  How far did you go in school?

14          THE WITNESS:  I completed the ninth grade,

15  dropped out in the tenth.  Got my GED.

16          THE COURT:  Do you have any condition that

17  prevents you from understanding what I am saying to you

18  today or what Mr. Grimes tells you?

19          THE WITNESS:  No, ma'am.

20          THE COURT:  Have you ever been treated for

21  mental illness or emotional problem?

22          THE WITNESS:  Not as of yet.

23          THE COURT:  Do you believe that you have a

24  mental illness or emotional problem that needs to be

25  treated?

1          THE WITNESS:  I'm in the process of that

2    now.

3          THE COURT:  Okay.  Tell me what does that

4    involve?  You are currently being treated?

5          THE WITNESS:  Yes, ma'am.  At the jail they

6    got me on Zoloft for depression, and I am trying to talk

7    to them about putting me on Lithium.

8          THE COURT:  Currently, you're on Zoloft?

9          THE WITNESS:  Yes, ma'am.

10          THE COURT:  Do you believe that your

11    condition of suffering from depression or the effects of

12    the Zoloft medication, would not make you able to

13    understand what is happening today?

14          THE WITNESS:  No, ma'am.

15          THE COURT:  Okay.  Have you ever been

16    treated for alcohol addiction or addiction to narcotic

17    drugs of any kind?

18          THE WITNESS:  No, ma'am; but I am a drug

19    addict.

20          THE COURT:  Are you currently under the

21    influence of any drug or medication including prescribed

22    medication other than the Zoloft that you told me about?

23          THE WITNESS:  No, ma'am.  The Zoloft.

24          THE COURT:  Are you under the influence of

25    any alcoholic beverages?

1          THE WITNESS:  No, ma'am.

2          THE COURT:  Do you have the ability today to

3  think clearly?

4          THE WITNESS:  Yes, ma'am.

5          THE COURT:  Mr. Grimes, in your opinion is

6  Mr. Thomas competent to enter a plea today?

7          MR. GRIMES:  He is, Your Honor.

8          THE COURT:  Do you have any doubts or

9  questions about his competency?

10          MR. GRIMES:  I do not.

11          THE COURT:  Mr. Thomas, you indicate that

12  you're considering pleading guilty to five different

13  counts of the indictment; counts one, six, eight, nine

14  and 13.  So I want to review those charges with you.  Do

15  you have a copy of the second superseding indictment

16  there with you?

17          THE WITNESS:  Yes, ma'am.

18          THE COURT:  Have you fully discussed the

19  charges in your case with Mr. Grimes?

20          THE WITNESS:  Yes, ma'am.

21          THE COURT:  Do you understand the charges to

22  which you intend to plead guilty?

23          THE WITNESS:  Yes, ma'am.

24          THE COURT:  Do you understand that all five

25  of the charges are felonies?

1        THE WITNESS:  Yes, ma'am.

2        THE COURT:  I am going to go over each of

3   the charges with you.  I'm going to read from the

4   charging language and ask you some questions, and then

5   I'll ask the United States to go over the elements of

6   each of those charges.

7        So first with regard to count one:

8   Beginning on a date unknown but at least sometime in

9   November 2015 and continuing thereafter through

10  February 2016, in the Western District of Virginia,

11  Joshua Voress, Tyler Johnson, a/k/a DJ, Noel Phillip

12  Solett, a/k/a Miami, and Brandon Scott Thomas, a/k/a

13  Gambino, did knowingly and intentionally conspire with

14  other persons, both indicted and unindicted to knowingly

15  and intentionally distribute, and possess with intent to

16  distribute, 50 grams or more of methamphetamine or 500

17  grams or more of a mixture or substance containing a

18  detectable amount of methamphetamine, a Schedule II

19  controlled substance, in violation of Title 21, United

20  States Code Section 841(a)(1) and (b)(1)(A).  All in

21  violation of Title 21, United States Code Section 846.

22        Mr. Thomas, do you understand what your

23  charged with in count one of the second superseding

24  indictment?

25        THE WITNESS:  Yes, ma'am.

1              THE COURT:  Has Mr. Grimes explained the

2      elements of that count to you?

3              THE WITNESS:  Yes, ma'am.

4              THE COURT:  I would ask the government to

5      outline the elements with regard to count one, please.

6              MS. ROTTENBORN:  Yes, Your Honor.  As you

7      indicated count one charges Mr. Thomas with a drug

8      conspiracy, specifically that he conspired with others

9      to distribute or possess with intent to distribute

10     either 500 grams or more of a substance containing a

11     detectable amount of methamphetamine or 50 grams or more

12     of actual methamphetamine.  The elements of that crime

13     are that, one, that two or more persons agreed to

14     violate the federal drug laws; two, that Mr. Thomas knew

15     the essential objective of the conspiracy; three, that

16     Mr. Thomas knowingly and voluntarily involved himself in

17     the conspiracy; four, that there was interdependence

18     among the members of the conspiracy; and five, that the

19     overall scope of the conspiracy involved 500 grams or

20     more of a substance containing a detectable amount of

21     methamphetamine or 50 grams or more of actual

22     methamphetamine.

23             THE COURT:  Mr. Thomas, do you understand

24     the elements of this offense?

25             THE WITNESS:  Yes, ma'am.

1            THE COURT:  Now, we are going to go over

2    counts six and eight.  I'll read those one after the

3    other.

4            Count six, with regard to sex-trafficking by

5    force, fraud or coercion.  On a date not known to the

6    grand jury that in or around January 2016, in the

7    Western District of Virginia, Brandon Scott Thomas,

8    a/k/a Gambino, the defendant did knowingly recruit,

9    entice, harbor, transport, provide, obtain, advertise,

10   maintain, patronize, and solicit by any means in and

11   affecting interstate commerce, V1, knowing or in

12   reckless disregard of the fact that force, threats of

13   force, fraud or coercion as described in Title 18,

14   United States Code Section 1591(e)(2) or any combination

15   of such means, would be used to cause V1 to engage in a

16   commercial sex act.  All in violation of Title 18,

17   United States Code Section 1591(a)(1), (b)(1).

18            With regard to count eight, sex-trafficking

19   by fraud, force or coercion.  On a date not known to the

20   grand jury, but in or around August 2015 through in or

21   around January 2016, in the Western District of

22   Virginia, Brandon Scott Thomas, a/k/a Gambino, the

23   defendant, did knowingly recruit, entice, harbor,

24   transport, provide, obtain, advertise, maintain,

25   patronize and solicit by any means, in and affecting

interstate commerce V3, knowing or in reckless disregard
of the fact that force, threats of force, fraud or
coercion as described in Title 18, United States Code
section 1591(e)(2), or any combination of such means,
would be used to cause V3 to engage in a commercial sex
act.  All in violation of Title 18, United States Code
Section 1591(a)(1), (b)(1).

Has Mr. Grimes, Mr. Thomas, explained to you
the elements with regard to count six and count eight?

THE WITNESS:  Yes, ma'am.

THE COURT:  I would ask the government to
outline those elements, please.

MS. ROTTENBORN:  Yes.  The elements for
counts six and eight are as follows.  Number one, that
Mr. Thomas knowingly either recruited, enticed,
harbored, transported, provided, obtained, maintained,
advertised, patronized or solicited the victim
identified in the account in the indictment; two, that
Mr. Thomas knew or recklessly disregarded the fact that
force, threats of force, fraud or coercion as those
words are further defined by the statute or any
combination of those means, would be used to cause a
victim identified in the indictment to engage in a
commercial sex act.  And lastly number three, that the
offense was in or affecting interstate or foreign

 1    commerce.

 2              THE COURT:  Mr. Thomas, do you understand

 3    the elements of count six and eight?

 4              THE WITNESS:  Yes, ma'am.

 5              THE COURT:  Moving onto count nine,

 6    conspiracy to engage in sex-trafficking.  On a date not

 7    known to the grand jury that in or around July 2016

 8    through in or around February 2016, in the Western

 9    District of Virginia, Brandon Scott Thomas, a/k/a

10    Gambino, willfully and knowingly combined, conspired,

11    confederated and agreed with other persons whose

12    identities are known or unknown to the grand jury to

13    commit the following offenses against the United States,

14    to wit:  to knowingly recruit, entice, harbor,

15    transport, provide, obtain, advertise, maintain,

16    patronize or solicit by any means, in and affecting

17    interstate commerce, a person or persons, including V1,

18    V2, V3 and/or V4 knowing or in reckless disregard of the

19    facts that force, threats of force, fraud or coercion as

20    described in Title 18, United States Code Section 1591

21    (e)(2), or any combination of such means, would be used

22    to cause such person to engage in a commercial sex act,

23    in violation of Title 18 United States Code Section 1591

24    (a)(1); and did benefit financially or by receiving

25    anything of value from participation in a venture which

has engaged in knowingly recruiting, enticing,

harboring, transporting, providing, obtaining,

advertising, maintaining, patronizing and soliciting by

any means, in and affecting interstate commerce, a

person or persons including V1, V2, V3 and/or V4 knowing

or in reckless disregard of the fact that force, threats

of force, fraud or coercion as described in Title 18,

United States Code Section 1591(e)(2), or any

combination of such means would be used to cause such

person to engage in a commercial sex act, in violation

of Title 18, United States Code Section 1591(a)(2).

Ways, Means and Manner of the Conspiracy.

It is a part of the conspiracy that Brandon Scott

Thomas, a/k/a Gambino, ran a prostitution enterprise.

It was a part of the conspiracy that Brandon Scott

Thomas, a/k/a Gambino, would participate in the posting

of prostitution advertisements on the internet at

www.backpage.com by accepting his Backpage account

through his email address on his or others' cellular

phones.

It was part of the conspiracy that Brandon

Scott Thomas, a/k/a Gambino, would recruit, solicit,

obtain and entice females for prostitution and for the

separate purpose of having them engage in sex acts with

him by providing the females with controlled substances,

including heroin and methamphetamine.

It was a part of the conspiracy that Brandon Scott Thomas, a/k/a Gambino, provided controlled substances, including heroin and methamphetamine to the females, including V1, V2 and V3, for their personal use, which kept them chemically dependent to entice their performance of prostitution services and to reward them when prostitution services were performed.

It was a part of the conspiracy that Brandon Scott Thomas, a/k/a Gambino, withheld controlled substances rendering the females dope sick, if they were not making sufficient amounts of money through prostitution services.

It was a part of the conspiracy that Brandon Scott Thomas, a/k/a Gambino, threatened physical force and used physical force, including slapping, punching, choking and pistol-whipping to compel the females to engage in prostitution services.

It was a part of the conspiracy that Brandon Scott Thomas, a/k/a Gambino, a convicted felon carried and brandished a firearm in furtherance of his drug trafficking and prostitution enterprises.

It was a part of the conspiracy that Brandon Scott Thomas, a/k/a Gambino, used the proceeds of the prostitution enterprise to buy controlled substances,

including but not limited to heroin and methamphetamine,

distributing those controlled substances on the street

for additional profit.

It was a part of the conspiracy that Brandon

Scott Thomas, a/k/a Gambino, recruited, solicited,

advertised, enticed, harbored, transported, provided,

obtained and/or maintained females by means or

facilities of interstate commerce, included but not

limited to cellular telephone service, on the internet

at www.backpage.com, through cellular phone applications

such as TextNow, and over internet-based social media

such as Facebook.

Overt Acts in Furtherance of a Conspiracy.

In furtherance of the conspiracy, between July 2015 and

February 2016, Brandon Scott Thomas, a/k/a Gambino,

distributed controlled substances, including heroin and

methamphetamine to V1, V2 V3 and others.  In furtherance

of the conspiracy, between July 2015 and February 2016,

Brandon Scott Thomas, a/k/a Gambino, used his account to

post advertisements on www.backpage.com for prostitution

services by V1, V2, V3 and V4, among others, which

services were performed in the Western District of

Virginia and that Brandon Scott Thomas, a/k/a Gambino,

collected proceeds from those prostitution services.

All in violation of Title 18, United States Code Section

1  1594(c).  All in violation of Title 21, United States

2  Code section 841(a)(2) -- ignore that last part.  All in

3  violation of Title 18, United States Code section

4  1594(c).

5          Has Mr. Grimes explained to you the elements

6  of count nine?

7          THE WITNESS:  Yes, ma'am.

8          THE COURT:  Ms. Rottenborn.

9          MS. ROTTENBORN:  Yes, Your Honor.  Count

10 nine is a conspiracy charge and as such the elements of

11 that crime are that the defendant, Mr. Thomas, knowingly

12 conspired; that is to say, that he agreed with one other

13 person to violate 18 United States Code Section 1591,

14 whose elements have previously been enumerated.

15         THE COURT:  Thank you.  And Mr. Thomas, do

16 you understand the elements of count nine?

17         THE WITNESS:  Yes, ma'am.

18         THE COURT:  Count 13, reading from the

19 second superseding indictment.  On a date unknown to the

20 grand jury but sometime between July 2015 and

21 February 2016 in the Western District of Virginia,

22 Brandon Scott Thomas, a/k/a Gambino, knowingly possessed

23 a firearm in furtherance of a drug trafficking crime or

24 a crime of violence for which he may be prosecuted in

25 the court of the United States.  All in violation of

Title 18, United States Code Section 924(c)(1)(A).

Has Mr. Grimes explained to you the elements of count 13?

THE WITNESS:  Yes, ma'am.

THE COURT:  I ask the government to outline those elements, please.

MS. ROTTENBORN:  Yes.  The elements of that count are as follows:  One, that Mr. Thomas committed the elements of a drug-trafficking crime that is prosecutable in federal court; two, that Mr. Thomas knowingly carried or possessed a firearm; three, that the carrying of the firearm was during and in relation to or the possession of a firearm was in furtherance of Mr. Thomas' drug-trafficking crime.

THE COURT:  Mr. Thomas, do you understand the elements of the offense listed in count 13?

THE WITNESS:  Yes, ma'am.

THE COURT:  Do you understand that a plea of guilty means that you are agreeing that you did the things charged in each of these five counts?

THE WITNESS:  Yes, ma'am.

THE COURT:  All right.  What I want to do now is go over the possible penalties for each of these offenses with you.  Because this is a drug offense, I first want to ask the government and confirm that the

United States has not filed any notice of a prior drug

felony under Title 21, United States Code Section 851.

Is that correct?

MS. ROTTENBORN:  That's correct, Your Honor.

THE COURT:  Mr. Thomas, so now I'm going to

go over the possible penalties for each of the offenses

to which you are intending to plead guilty, and we'll go

over them one by one.

First, as to the drug conspiracy in count

one.  The maximum possible penalty provided by law for

count one is a term of imprisonment of life and also has

a mandatory minimum term of imprisonment of ten years.

Count one has a maximum fine of $10 million.

You're required a term of supervised release of at least

five years and a supervised release term could be up to

life.

For counts six and eight, which charges you

with separate counts of sex-trafficking by fraud, force

or coercion, the penalties are the same for each count.

Specifically, each count has a maximum possible penalty

for a term of imprisonment of life.  Each count also has

a mandatory minimum term of imprisonment of 15 years.

Each count has a maximum fine of $250,000, requires a

term of supervised release of at least five years and a

supervised release term could be for life.

1    For count nine, which charges you with

2 conspiring to commit sex-trafficking by fraud, force or

3 coercion, the maximum possible penalty provided by law

4 is a term of imprisonment of life and has no mandatory

5 minimum term of imprisonment.  It has a maximum fine of

6 $250,000.  It requires a term of supervised release of

7 at least five years but the supervised release term

8 could be up to life.

9    For count 13, which charges you with

10 possessing a firearm in furtherance of a drug

11 trafficking crime, the maximum possible penalty is a

12 term of imprisonment of life.  It requires a mandatory

13 minimum term of imprisonment of five years, which must

14 run consecutively to any other sentence imposed.  By

15 consecutively, the term must be served in addition to

16 and after any other sentence imposed.

17    Each of the five counts also requires the

18 Court to impose a mandatory special assessment of $100

19 per count for a total of $500.

20    Additionally, the special assessment

21 provision Title 18, United States Code Section 3014,

22 would apply to this case; and so, unless the Court finds

23 that you are indigent you will be required to pay an

24 additional assessment of $5,000 pursuant to that

25 statute, which may apply to each count of sex-

1  trafficking for a total of $15,000.

2        Also for any and all of these counts, the

3  Court may order you to pay -- to make restitution to the

4  victims of the offense and require you to forfeit

5  certain property to the government.  Fees maybe imposed

6  to pay for incarceration and supervised release.  I also

7  advise you, Mr. Thomas, a sentence of probation is not

8  available for any of these offenses.

9        Counsel, are there any penalties that I have

10  not mentioned?

11        MS. ROTTENBORN:  Yes, Your Honor.  If I may

12  be heard briefly, please.

13        THE COURT:  You certainly may.

14        MS. ROTTENBORN:  I may have overlooked it

15  but as to count 13, the conviction under 18 USC 924(c)

16  there is also a maximum fine of up to $250,000.  And

17  with respect to the conviction under counts six, eight

18  and nine, a consequence of Mr. Thomas' conviction under

19  those counts will be that he is obligated to register as

20  a sex offender and subject to sex offender registry

21  provision.

22        THE COURT:  I should have mentioned it.  Do

23  you understand, Mr. Thomas, that a plea of guilty to

24  those counts would deem you a sex offender, and you'd

25  have to register as a sex offender?

```
 1                    THE WITNESS:  Yes, ma'am.

 2                    THE COURT:  Also with regard to count nine,

 3     the maximum fine would be $250,000 with regard to count

 4     nine.  I thought I had mentioned that, but I could have

 5     overlooked that.  Mr. Grimes, any penalties that I

 6     failed to mention?

 7                    MR. GRIMES:  No, Your Honor.

 8                    THE COURT:  Mr. Thomas, do you understand

 9     these penalties are a consequence of your plea?

10                    THE WITNESS:  Yes, ma'am.

11                    THE COURT:  Has Mr. Grimes fully explained

12     them to you?

13                    THE WITNESS:  Yes, ma'am.

14                    THE COURT:  I have a copy of the written

15     plea agreement.  Are there any differences between the

16     version that the Court has and the version that you're

17     asking me to consider today and sign?

18                    MS. ROTTENBORN:  Your Honor, there are no

19     differences, aside from the fact that it is my

20     understanding that Mr. Thomas now initialed the two

21     hand-written clarifications that were made and copies

22     submitted to the Court.

23                    THE COURT:  Will you please briefly

24     summarize the terms of the agreement for the record.

25                    MS. ROTTENBORN:  Yes, Your Honor.  Would you
```

1　like me to do so from here or would you like me to

2　approach.

3　　　　　　　THE COURT:  I can hear you, if you would

4　like to stay there.  I can hear you from there.

5　　　　　　　MS. ROTTENBORN:  I am going to start on page

6　one of the plea agreement.  Mr. Grimes says Mr. Thomas

7　has a copy that he can follow along with?

8　　　　　　　MR. GRIMES:  Yes.

9　　　　　　　MS. ROTTENBORN:  Starting at the very first

10　paragraph it states he has agreed to enter into a plea

11　agreement with the United States of America pursuant to

12　Rule(c)(1)(C) of the Federal Rules of Criminal Procedure

13　whereby you will plead guilty to counts one, six, eight,

14　nine and 13 of the second superseding indictment in

15　exchange for a sentence of imprisonment of between 240

16　and 324 months; that is, it's between 20 years and

17　27 years.  You agree in the very first paragraph of the

18　plea agreement that a sentence of imprisonment between

19　240 months and 324 months is a reasonable sentence for

20　the conduct charged in the second superseding

21　indictment, considering all of the facts and

22　circumstances of your case.

23　　　　　　　Moving on down the page.  You agree in

24　section A1 that your attorney, Mr. Grimes, has informed

25　you of the nature of the charges and the elements of the

1  charges that must be proved by the government beyond a

2  reasonable doubt before you can be found guilty as

3  charged.  Going down the page.  You state that you

4  understand that whatever sentence you receive within the

5  agreed upon range, is left to the Court's discretion.

6          We now turn to page two of the plea

7  agreement.  Starting at the top.  The agreement states

8  that as discussed in further detail the government is

9  retaining its right pursuant to Federal Rule of Criminal

10  Procedure 35B, the United States Sentencing Guideline

11  section 5K1.1 and 18 United States Code Section 3553(e),

12  these are the provisions that govern substantial

13  assistance.  In the event that the government elects to

14  make a motion for substantial assistance, under any of

15  these provisions, that you are stating that you

16  understand that the Court could sentence you to a period

17  of incarceration less than 240 months.  But you also are

18  stating that you understand and stipulate that if the

19  United States makes such a motion that you will not seek

20  a reduction in your sentence that would bring your total

21  period of incarceration below 200 months.  Accordingly,

22  you are stating that you understand that if the Court

23  accepts your guilty plea, pursuant to this Rule 11

24  (c)(1)(C) plea agreement, and even if the government

25  makes a motion for substantial assistance and it has no

obligation to do so, then you will in all likelihood be
sentenced to a period of incarceration between 200
months, which is approximately 16.6 years and 324
months, which is 27 years.

The rest of page two state the charges which
you are pleading guilty and the elements of those
charges.

If your turn to page three at the end of
that section, you state that you understand that
restitution maybe ordered as part of the sentence and
that you are pleading guilty as described, because you
are, in fact, guilty because you believe it's in your
best interest to do so and not because of any threats or
promises.

We now get to section two, which talks about
your constitutional rights.  You're acknowledging that
you have all of your rights explained to you.  And you
are expressly recognizing certain constitutional rights
that you are waiving as a result of your voluntary
guilty plea.

If you move onto section three, that's the
dismissal of counts provision, which states if you
comply with the obligations of this plea agreement that
the government would move at your sentencing hearing to
dismiss you as a defendant in the remaining counts to

the second superseding indictment.

If you move on to page four it talks about the sentencing provisions.  Specifically, in paragraph C1 under general matters.  It states, again, that you and the government have agreed to a total period of incarceration between 240 months and 324 months and that the parties agree that this is a reasonable sentence considering all of the facts and circumstances of this case.  You understand that the Court must sentence you within this rage or reject the plea agreement.  If and only if the Court rejects the plea agreement, will you been given an opportunity to withdraw your guilty plea.

At the end of section B1 you also state your understanding that you are not eligible for parole during any term of imprisonment imposed because there is no parole in the federal system.

Moving onto the bottom of page four, section B2, sentencing guidelines.  At this point in the plea agreement, the parties have stipulated to the application of sentencing guidelines as further discussed on page five.  Because this is a plea agreement under Rule 11(c)(1)(C), the sentencing guidelines are advisory to the Court.

If your turn to page six of the plea agreement, there is now a separate provision regarding

substantial assistance and the intent of that provision

is to reiterate the paragraph at the very beginning of

the plea agreement that governs the substantial

assistance agreement we have reached as part of this

plea agreement.

At the bottom of page six, section four,

commencing monetary obligations. And this states you

understand there will be certain special assessments

that may apply to certain of your convictions in this

case, and that you have agreed to pay restitution for

the entire scope of your criminal conduct.

Page eight discusses financial matters and

page nine discusses collection matters with respect to

payments of those assessments, restitution and any fine

the Court may or may not impose. If you get to page

nine, section C, entitled additional matters, C1 is

entitled waiver of right to appeal. In this section you

are acknowledging that you have certain rights of appeal

and you are expressly waiving those rights. The plea

agreement states that notwithstanding any language to

the contrary, you are not waiving any right to appeal or

have your attorney file a notice of appeal as to any

issues which cannot be waived by law. But you are

otherwise waiving your appellate rights.

At the top of page ten, the waiver of right

1  to collaterally attack.  Here you are agreeing and

2  understanding you will not file any type of habeas

3  petition or 2255 petition, except based on an appeal you

4  cannot waive by law.

5  If you turn to page 11, there are certain

6  special conditions of your period of supervised release

7  that will follow your period of incarceration and those

8  provisions include your registration as a sex offender.

9  If you please turn to page 12, there are

10  additional obligations that will apply to you as a

11  result of your signature on this plea agreement and

12  those obligations continue onto page 13.  On page 13

13  there is a section D entitled remedies available to the

14  United States.  And these are all of the remedies that

15  the government has available to it in the event that you

16  violate this plea agreement.

17  Page 14 of the plea agreement, under general

18  provisions, section E3 entitled effective

19  representation.  Here it states that you have discussed

20  the terms of this plea agreement and all matters

21  pertaining to the charges against you with your

22  attorney, in this case Mr. Grimes, and that you are

23  fully satisfied with your attorney and attorney's

24  advice.

25  On page 15, the last page of the plea

agreement, you state that you willingly stipulate there

is a sufficient factual basis to support each and every

material allegation contained in the charging document

which you are pleading guilty.  You also state that you

have carefully read and reviewed every part of this plea

agreement with your attorney and have not been forced,

threatened, or promised anything other than the terms of

this plea agreement in exchange for your plea of guilty.

You state you are aware of all the possible consequences

of your plea and have independently decided to enter a

plea of your own free will and you have affirmed that

agreement with your signature below.

       THE COURT:  Thank you, Ms. Rottenborn.  Has

the government accurately stated the terms of the

agreement?

       MR. GRIMES:  Yes, Your Honor.

       THE COURT:  Mr. Thomas, the government has

described the key terms of the plea agreement here in

open court and the agreement has been reduced to

writing.  I understand you have a copy in front of you;

is that correct?

       THE WITNESS:  Yes, ma'am.

       THE COURT:  Did you sign that agreement

indicating that you agreed with it?

       THE WITNESS:  Yes, ma'am.

1           THE COURT:  Did you initial each page?

2           THE WITNESS:  Yes, ma'am.

3           THE COURT:  Did you read it and talk to Mr.

4    Grimes about it before you signed it?

5           THE WITNESS:  Yes, ma'am.

6           THE COURT:  Do you understand the agreement?

7           THE WITNESS:  Yes, ma'am.

8           THE COURT:  Is there anything about it that

9    you don't understand?

10          THE WITNESS:  No, ma'am.

11          THE COURT:  Is there anything that you

12   thought was going to be in the agreement that was left

13   out of the agreement?

14          THE WITNESS:  No, ma'am.

15          THE COURT:  Other than what's in the plea

16   agreement, has anyone made any other or different

17   promise or assurance to you of any kind in the effort to

18   persuade you to accept the agreement?

19          THE WITNESS:  No, ma'am.

20          THE COURT:  Has anyone forced you or

21   threatened you to sign the agreement?

22          THE WITNESS:  No, ma'am.

23          THE COURT:  I want to discuss some of the

24   specifics of your plea agreement with you.  First, the

25   plea agreement states if you comply with it, the United

1 States will move at sentencing to dismiss the remaining

2 counts of the second superseding indictment. Do you

3 understand if I reject that part of the plea agreement,

4 that I will give you the opportunity to withdraw your

5 guilty plea?

6           THE WITNESS: Yes, ma'am.

7           THE COURT: Do you understand if I accept

8 the plea agreement, the remaining charges against you

9 will be dismissed upon a motion of the government and

10 that dismissal will be included in the judgment of the

11 Court?

12           THE WITNESS: Yes, ma'am.

13           THE COURT: The plea agreement also contains

14 certain guideline stipulations, all of which are set

15 forth on pages four and five of the agreement.

16 Specifically, you and the United States stipulate that

17 the 2015 edition of the guideline manual applies to any

18 sentencing calculations. For count one you and the

19 United States are agreeing that a drug weight of

20 150 grams but less than 500 grams of actual

21 methamphetamine is appropriate and will result in a base

22 offense level of 32. You also agree that there will be

23 a two-level increase to the base offense level for use

24 of violence and another two-level increase under

25 guideline section 3C1.1 for obstruction of justice.

1          For counts six and eight, the parties agree

2    that the base offense level under 2G1.1 is 34.  You

3    should receive a two-level increase under guideline

4    section 3B1.1C for your role in the offense and should

5    receive another two-level increase under guideline

6    section 3C1.1 for obstruction of justice.

7          Count nine, you and the United States agree

8    that the base offense level under guideline 2X1.1 should

9    be cross-referenced to guideline section 2G1.1.  We

10   further agree that counts six and eight the base offense

11   level under 2G1.1 is 34, and you should receive a

12   two-level increase under guideline section 3B1.1C for

13   your role in the offense and you receive another

14   two-level increase under guideline section 3C1.1 for

15   obstruction of justice.

16         Lastly, for count 13, the possessing of a

17   firearm in furtherance of a drug-trafficking crime.  You

18   will agree that the offense level is governed by 2K2.4

19   and that the guideline sentence is a minimum term of

20   imprisonment required by statute, which is five years to

21   be served consecutive to any other sentence.  The

22   government also agrees that if you abide by the

23   agreement, it will recommend to the Court that you

24   receive a total reduction of three levels for acceptance

25   of responsibility.

1          Do you understand, Mr. Thomas, that all of

2  these guideline stipulations that I just discussed, are

3  an agreement between you and the government and those

4  guideline stipulations are not binding on the Court?

5          THE WITNESS:  Yes, ma'am.

6          THE COURT:  At sentencing, the Court is free

7  to disagree with those guideline stipulations based on

8  the presentence report, the law and the facts.  Do you

9  understand that?

10          THE WITNESS:  Yes, ma'am.

11          THE COURT:  Do you understand that I can

12  reject some or all of the guideline stipulation

13  recommendations without permitting you to withdraw your

14  guilty plea?

15          THE WITNESS:  Yes, ma'am.

16          THE COURT:  Your plea agreement provides

17  that the Court will be bound to sentence you within a

18  specific sentencing range.  Specifically your agreement

19  provides that the Court will be required to impose a

20  total period of incarceration between 240 months and

21  324 months, which is 20 years to 27 years.  The only

22  exception is that if the United States files a motion

23  for substantial assistance and it has sole discretion as

24  to whether to file such a motion.  But if it does, then

25  you agree not to seek a total period of incarceration

below 200 months.  Do you understand that if the Court

accepts the Rule 11(c)(1)(C) plea agreement, you will be

sentenced within the range as specified in your

agreement?

THE WITNESS:  Yes, ma'am.

THE COURT:  Do you understand if I choose

not to follow the terms of the plea agreement and not to

accept the plea agreement with regard to the term of

imprisonment to be imposed, I will give you the

opportunity to withdraw your plea?

THE WITNESS:  Yes, ma'am.

THE COURT:  Do you understand that if you

are given the choice to withdraw your plea and you

choose not to do so, the Court may impose a greater

sentence than found in your plea agreement?

THE WITNESS:  Yes, ma'am.

THE COURT:  Do you want the Court to accept

the plea agreement?

THE WITNESS:  Yes, ma'am.

THE COURT:  Mr. Grimes, were all formal plea

offers by the government made to Mr. Thomas?

MR. GRIMES:  Yes, Your Honor.

THE COURT:  Do you understand, Mr. Thomas,

that the offenses to which you are pleading guilty are

felonies?  If your plea is accepted, you'll be adjudged

guilty of those offenses and that adjudication may

deprive you of valuable civil rights; such as the right

to vote, the right to hold public office, the right to

serve on a jury and the right to possess any kind of

firearm?

THE WITNESS:  Yes, ma'am.

THE COURT:  Do you understand that as we

mentioned before, that your conviction for the offenses

in counts six, eight and nine, will require you to

register as a sex offender and likely result in

substantial future restrictions on where you may live or

work and with whom you may associate?

THE WITNESS:  Yes, ma'am.

THE COURT:  We are not sentencing you today,

Mr. Thomas.  But I want to go over with you the

procedure by which your sentence will be determined.  I

want you to understand that.  If the Court accepts your

plea agreement, then it would be bound to sentence you

within the range specified in your agreement.  In

determining your sentence within that range, the Court

will consider the following factors:  The nature and

circumstances of the offense, your history and

characteristics, the need for the sentence imposed to

reflect the seriousness of the offense, promote respect

for the law, provide just punishment, afford adequate

deterrence, to protect the public, the kinds of
sentences available, the pertinent sentencing guidelines
and the pertinent policy statements, the need to avoid
unwanted sentencing disparities and the need to provide
restitution.

If you go forward with a plea of guilty, the
United States probation office will prepare a thorough
report that will provide me with more information about
you and your background in sentencing.  That report
gives me much more information than I have now.  I have
very limited information about you now.  Mostly it's
just based on the offenses.  So that information in the
report will allow me to have that additional information
to assist me in making my sentencing decision.

Do you understand, Mr. Thomas, that in the
federal system parole has been abolished?

THE WITNESS:  Yes, ma'am.

THE COURT:  So if you are sentenced to
prison in connection with the conviction of these
charges, you would serve your full term less any good
time credit earned.  Do you understand that?

THE WITNESS:  Yes, ma'am.

THE COURT:  We also talked about supervised
release.  I want to tell you what supervised release is
briefly.  If you plead guilty and I accept that plea,

1 you maybe sentenced to a period of supervised release

2 following imprisonment and that's in addition to the

3 period of imprisonment imposed.  Supervised release is a

4 term that you serve under the supervision of the United

5 States probation office.  There will be certain things

6 you must do when you're on supervised release and

7 certain things you can't do.

8     If you violate a condition of supervised

9 release, then you may be resentenced by this Court.  The

10 Court can impose an additional prison term, regardless

11 of how much time you already served.  If you're

12 resentenced, following a violation of supervised

13 release, you can actually serve a combined total period

14 of incarceration greater than the maximum term that we

15 talked about.  Do you understand the effect of

16 supervised release and the potential for increased

17 prison term if you violate conditions of supervised

18 release.

19     THE WITNESS:  Yes, ma'am.

20     THE COURT:  All right.  I want to go over

21 with you important rights, constitutional and procedural

22 rights that you are waiving with regard to the plea

23 agreement, if you plead guilty.  You have the right, Mr.

24 Thomas, to plead not guilty, to maintain your plea of

25 not guilty to any offense charged against you.  And if

1    you were to plead not guilty, you would have the right

2    to trial by a jury of 12 unbiased jurors and during that

3    trial you would be presumed to be innocent.  The United

4    States would have to prove beyond a reasonable doubt

5    that you were guilty of all of the elements of those

6    offenses that we talked about.  And all 12 jurors would

7    have to agree to convict you.  Do you understand that?

8              THE WITNESS:  Yes, ma'am.

9              THE COURT:  During that trial you would have

10   the right to assistance of counsel and have counsel

11   appointed, if you could not afford counsel.

12             THE WITNESS:  Yes, ma'am.

13             THE COURT:  During that trial the witnesses

14   would have to come into court and testify in front of

15   you and your attorney would have the right to ask those

16   witnesses questions and to object to certain testimony

17   and to other evidence as allowed by the rules.  You

18   would have the right to present testimony of witnesses

19   and compel them to appear at the trial and introduce

20   other evidence on your behalf.  Also, if you wanted, you

21   could testify under oath before the jury and you could

22   also decide not to testify and remain silent.  In this

23   Court, the jury could not use your decision to remain

24   silent against you.

25             Do you understand that?

1          THE WITNESS:  Yes, ma'am.

2          THE COURT:  Do you further understand that

3   by entering a plea of guilty, if that plea is accepted

4   by the Court, there will be no trial.  You will have

5   waived your right or given up your right to trial as

6   well as those other important valuable rights that are

7   associated by having a trial that I just described.

8          THE WITNESS:  Yes, ma'am.

9          THE COURT:  Knowing you'll be giving up all

10  these valuable rights, do you still intend to plead

11  guilty?

12         THE WITNESS:  Yes, ma'am.

13         THE COURT:  Your plea agreement also

14  contains some waivers that I want to discuss with you,

15  contains an appeal waiver.  Do you understand that you

16  are waiving your right to appeal any sentence that I

17  impose?

18         THE WITNESS:  Yes, ma'am.

19         THE COURT:  Do you understand that the plea

20  agreement states that you will not file a notice of

21  appeal?

22         THE WITNESS:  Yes, ma'am.

23         THE COURT:  The only exception to that

24  appeal waiver are matters that cannot be waived as a

25  matter of law.  Do you understand that?

1             THE WITNESS: Yes, ma'am.

2             THE COURT: Do you understand that the plea

3 agreement provides that if you do file an appeal

4 document except for matters that can't be waived, then

5 that filing constitutes a failure by you to abide by the

6 plea agreement?

7             THE WITNESS: Yes, ma'am.

8             THE COURT: Also it contains a habeas

9 waiver. The plea agreement states you are waiving your

10 right to collaterally attack your plea and your

11 sentence. That means you can't file a separate civil

12 action called a habeas corpus petition later on

13 attacking your plea and sentence. The only exception

14 with regard to a habeas petition is based on ineffective

15 assistance of counsel. Do you understand that the plea

16 agreement provides that if you file any collateral

17 attack or petition other than for ineffective assistance

18 of counsel, that filing constitutes a failure by you to

19 abide by the plea agreement?

20             THE WITNESS: Yes, ma'am.

21             THE COURT: Understanding all these rights

22 that you're waiving if you plead guilty, do you still

23 intend to do so?

24             THE WITNESS: Yes, ma'am.

25             THE COURT: Mr. Thomas, you have been

1  represented by Mr. Grimes.  Are you fully satisfied with

2  the advice and representation given to you in this case

3  by Mr. Grimes?

4          THE WITNESS:  Yes, ma'am.

5          THE COURT:  Is there anything you want to

6  ask me or ask him before we continue?

7          THE WITNESS:  No, ma'am.

8          THE COURT:  Then we want to now talk about

9  the factual basis for the guilty plea.  So I would ask

10  the United States to present the facts.  Mr. Grimes, Mr.

11  Thomas, would you like to be seated?  You have been

12  standing there for awhile.

13          MR. GRIMES:  Yes, Your Honor.

14          THE COURT:  I ask the United States to

15  present the facts its prepared to prove, if it were to

16  go to trial.

17          MS. ROTTENBORN:  Yes, Your Honor.

18          THE COURT:  Mr. Grimes, do you have any --

19          MR. GRIMES:  No, Your Honor.

20          MS. ROTTENBORN:  It's my understanding that

21  the parties agreed to the agreed statement of facts and

22  the government is going to proffer those facts as

23  evidence that it would prove beyond a reasonable doubt,

24  if it were to submit that evidence at trial in this

25  matter.

In the summer of 2015, Mr. Thomas and two other individuals called themselves the Bang Brothers. Mr. Thomas' street name was Gambino. From July 2015 until Mr. Thomas' arrest in March of 2016, Mr. Thomas bought and sold heroin, methamphetamine and other illegal drugs. Mr. Thomas had multiple sources from whom he bought heroin and methamphetamine. One of his sources of methamphetamine was Noel Solett, a/k/a Miami. Another one of his sources was source two. Mr. Thomas bought crystal methamphetamine from Solett once in January of 2016 and crystal methamphetamine about twenty times from source two in January and February 2016. Mr. Thomas knew that Solett had other customers and that Solett was buying and selling ounces of crystal methamphetamine regularly. Mr. Solett has provided statements to law enforcement that he purchased approximately 1,000 grams of crystal methamphetamine from an individual identified in the indictment as a codefendant named Tyler Johnson between November 2015 and February 2016.

Mr. Johnson provided statements to law enforcement as well as under oath testimony that he purchased between 15 pounds, which is 6,803 grams approximately, and thirty pounds, which is 13,607 grams approximately, of crystal methamphetamine from Mr.

Joshua Voress, who is another codefendant, during that same time period.  And that Solett and the individual identified as source two were Mr. Johnson's two primary customers.

Had this case proceeded to trial the government would've put on evidence to prove those facts beyond a reasonable doubt.  Additionally, Mr. Thomas has admitted that he is a drug addict.  From July 2015 to February 2016, Mr. Thomas sold methamphetamine and heroin on the street to support his drug habit.  Mr. Thomas also provided methamphetamine and heroin to women who were working as prostitutes.  Another member of the Bang Brothers also provided methamphetamine and heroin to women who were working as prostitutes.  During this same time period, Mr. Thomas periodically had possessed firearms including but not limited to a revolver and a sawed-off shotgun.  Those firearms did not belong to Mr. Thomas, but he borrowed them from others.  He possessed those firearms to improve his imagine and provide protection when there was drug deals and when interacting with others involved in criminal activity.

From approximately July 2015 through February 2016, Mr. Thomas along with other unindicted individuals ran a prostitution business that involved multiple women in Roanoke and Charlottesville, including

but not limited to individuals identified in the
indictment as V1, V2, V3 and V4. Mr. Thomas got the
idea from an individual identified as IG who also ran a
prostitution business. During this time period, Mr.
Thomas was destitute and primarily living out of hotels
including the Ramada Inn and Days Inn in Roanoke City.
Mr. Thomas posted prostitution advertisements on
www.backpage.com through an account on his cellphone
that he established using his gmail email address and
cellphone number.

The customers, otherwise known as Johns,
came to the hotels for in-call services. Generally
speaking, Mr. Thomas lived off of the money the women
earned and the money he made from selling drugs. Mr.
Thomas used the money to pay for hotel rooms and buy
drugs and food. Mr. Thomas provided illegal drugs
primarily methamphetamine and heroin to the women who
were working as prostitutes. Mr. Solett frequently
visited the hotel where Mr. Thomas was living and Mr.
Solett was aware of Mr. Thomas' prostitution activities
and Mr. Solett also sold and provided methamphetamine to
the prostitutes.

From at least September 2015 through
February 2016, Mr. Thomas was physically abusive to the
individual identified in the indictment as V4 on a

regular basis.  Mr. Thomas slapped, punched and choked

her.  On at least one occasion Mr. Thomas held a knife

to her throat.  On at least one occasion Mr. Thomas

tasered her.  Mr. Thomas beat her when she was pregnant.

Mr. Thomas beat her in front of others including women

who were prostituting for him.

Mr. Thomas prostituted V4 both in Roanoke

and Charlottesville in the fall of 2015 by posting ads

on www.backpage.com and collecting the proceeds from her

prostitution services.  Victim four told law enforcement

that she wanted -- that when she wanted to turn down

prostitution acts, she quote got into trouble with Mr.

Thomas, and he threatened her that she would perform

prostitution acts.  In January of 2016 victim one worked

for Mr. Thomas as a prostitute for four days at the

Ramada Inn in Roanoke.  Mr. Thomas initially offered to

be V1's pimp in exchange for 30 percent of the proceeds

of her prostitution services.  After she began working

for Mr. Thomas, Mr. Thomas ended up with all of the

proceeds that V1 earned from prostitution activity,

which were used for drugs, food and pay the hotel bill.

Mr. Thomas knew that V1 had a drug habit and

at times told V1 that he could not buy heroin until

after she performed prostitution activity and made money

for drugs.  There were occasions when Mr. Thomas

threatened to physically hurt V1.  When she sought to

leave the hotel, Mr. Thomas threatened her with physical

harm, if she told anyone about their arrangement.  Mr.

Thomas deleted text messages and other incriminating

evidence off of V1's cellphone.

In the fall of 2015 through January 2016, V3

worked at times as a prostitute for Mr. Thomas and made

money off of her prostitution activities.  Mr. Thomas

knew that V3 had a drug habit and at times he told V3

that Mr. Thomas would not be able to get her drugs until

after she performed prostitution activities.  Mr. Thomas

also threatened to physically hurt V3, if she did not

quote unquote work; ie, prostitute.

Mr. Thomas was arrested on March 3, 2016.

While Mr. Thomas was detained in jail pending trial, he

made several phone calls to and had jail or video visits

with his mother and an individual identified in the

indictment as V4.  Mr. Thomas requested that they

destroy cellphones that contained evidence of his

backpage account and asked them to provide false

testimony on his behalf, if called as witnesses at his

trial.

THE COURT:  Thank you, Ms. Rottenborn.

Mr. Grimes, if you would approach again with

Mr. Thomas.

1          I want to clarify a couple of things.  Mr.

2 Thomas, do you know the true identities of the

3 individuals identified in the second superseding

4 indictment as V1, V2, V3 and V4?

5          THE WITNESS:  Yes, ma'am.

6          THE COURT:  The government noted in its

7 proffer of facts that V4 told law enforcement when she

8 wanted to turn down prostitution acts, she got into

9 trouble with you and that you threatened her.  Do you

10 agree that was an accurate statement by her?

11          THE WITNESS:  Yes, ma'am.

12          THE COURT:  Mr. Thomas, do you agree that

13 the facts proffered by the United States are true and

14 accurate?

15          THE WITNESS:  Yes, ma'am.

16          THE COURT:  Do you agree that if this matter

17 proceeded to trial, the United States would have proven

18 the facts outlined beyond a reasonable doubt?

19          THE WITNESS:  Yes, ma'am.

20          THE COURT:  Mr. Grimes, is there any dispute

21 about the facts just presented?

22          THE WITNESS:  No, Your Honor.

23          THE COURT:  Mr. Thomas, anything else in the

24 summary that is not correct?

25          THE WITNESS:  No, ma'am.

1              THE COURT:  Mr. Thomas, can you tell me in

2    your own words what you did that makes you believe you

3    are guilty of these federal criminal charges?

4              THE WITNESS:  I don't know where to start.

5              THE COURT:  Let's divide it up.  The drug

6    conspiracy.  Can you tell me what you did that makes you

7    believe that you are guilty of the drug conspiracy?

8              THE WITNESS:  I sold drugs to provide -- to

9    support by drug habit.

10             THE COURT:  Did you agree with others to do

11   that?

12             THE WITNESS:  Yes, ma'am.

13             THE COURT:  Let's talk about possession of a

14   firearm in furtherance of drug-trafficking.  What did

15   you do to make you believe you're guilty of that crime?

16             THE WITNESS:  I have had firearms over the

17   past year.

18             THE COURT:  Was that in furtherance to

19   protect you because you were dealing drugs?

20             THE WITNESS:  Yes, ma'am.

21             THE COURT:  Let's talk about the sex-

22   trafficking charges.  What did you do that makes you

23   believe you're guilty of the sex-trafficking by force,

24   fraud or coercion?

25             THE WITNESS:  I posted the ads and provided

1 the female prostitutes and also provided them with

2 drugs.

3 THE COURT: Did you threaten them?

4 THE WITNESS: Yes, ma'am.

5 THE COURT: What about the conspiracy to

6 engage in sex-trafficking. Did you agree with others in

7 the pursuit of sex-trafficking?

8 THE WITNESS: Yes, ma'am.

9 THE COURT: Did you profit from that?

10 THE WITNESS: Barley.

11 THE COURT: Did you profit in some way from

12 that?

13 THE WITNESS: Yes, ma'am.

14 THE COURT: Are you, in fact, guilty of what

15 is charged in the five counts of the indictment?

16 THE WITNESS: Yes, ma'am.

17 THE COURT: Are you pleading guilty of your

18 own free will?

19 THE WITNESS: Yes, ma'am.

20 THE COURT: Mr. Grimes, based on your

21 investigation of the facts of this case and your

22 understanding of Mr. Thomas and what took place in

23 connection with this indictment and your review of

24 discovery and the law, do you believe that Mr. Thomas'

25 plea of guilty is well advised and consistent with those

1  facts?

2          MR. GRIMES:  I have reservations about

3  counts one and nine, and I have explained those to my

4  client.  Nevertheless, he has elected to enter into the

5  plea agreement which he has an absolute right to do.

6          THE COURT:  Other than those reservations,

7  do you know of any reason why Mr. Thomas should not

8  plead guilty?

9          MR. GRIMES:  I do not.

10          THE COURT:  Mr. Thomas, is there anything

11  you wish to discuss with Mr. Grimes at this point?

12          THE WITNESS:  No, ma'am.

13          THE COURT:  Knowing that he has reservations

14  about one and nine, do you still wish to go forward with

15  your plea of guilty?

16          THE WITNESS:  Yes, ma'am.

17          THE COURT:  I understand there is no

18  testimony from victims at this time; is that correct?

19          MS. ROTTENBORN:  That's correct, Your Honor.

20          THE COURT:  Mr. Thomas, since your plea

21  agreement contains an agreement to dismiss other counts

22  and would bind the Court to impose a term of

23  imprisonment within a specific sentencing range, the

24  rules permit me to defer formal acceptance of your plea

25  agreement until a later time, which I'm going to do.

1        Although I looked over the plea agreement

2  and it appears to be reasonable at this time, the

3  presentence report that's prepared will give me

4  additional information about the conduct that's said to

5  have occurred in more detail about your background.  If

6  you plead guilty today, I will consider whether or not

7  to formally accept the plea agreement after I have had

8  the opportunity to more fully understand the facts of

9  your offense and your background.  At that point, if I

10  decide to reject the plea agreement, you will then have

11  the opportunity to withdraw your plea and change it to

12  not guilty.  Do you understand that?

13        THE WITNESS:  Yes, ma'am.

14        THE COURT:  Before I ask you how you'd like

15  to plead, is there anything you want to talk to Mr.

16  Grimes about?

17        THE WITNESS:  No, ma'am.

18        THE COURT:  Is there anything else you want

19  to tell me or ask me?

20        THE WITNESS:  No, ma'am.

21        THE COURT:  Then Mr. Thomas, how do you

22  plead to count one of the second superseding indictment?

23        THE WITNESS:  Guilty.

24        THE COURT:  How do you plead to count six of

25  the second superseding indictment?

1          THE WITNESS:  Guilty.

2          THE COURT:  How do you plead to count eight

3    of the second superseding indictment?

4          THE WITNESS:  Guilty.

5          THE COURT:  How do you plead to count nine

6    of the second superseding indictment?

7          THE WITNESS:  Guilty.

8          THE COURT:  How do you plead to count 13 of

9    the second superseding indictment?

10         THE WITNESS:  Guilty.

11         THE COURT:  I want you to listen carefully

12   to Ms. Dozer.  She's going to read the written guilty

13   plea form to you and you will then be given a copy.

14         MS. CLERK:  Please listen carefully, Mr.

15   Thomas.  In the presence of my counsel who has fully

16   explained the charges contained in the second

17   superseding indictment against me and having received a

18   copy of the second superseding indictment from the

19   United States attorney, before being called upon to

20   plead, I hereby plead guilty to said second superseding

21   indictment; counts one, six, eight, nine and 13,

22   thereof.  I have been advised of the maximum punishment

23   which may be imposed by the Court for this offense.  My

24   plea of guilty is made knowingly and voluntarily and

25   without threat of any kind or without promises other

1   than those disclosed here in open court.

2   THE COURT:  A copy of that form is being

3   given to you.  I want you to read that with Mr. Grimes.

4   If it's correct and you agree with it, I ask you to sign

5   at the bottom.

6   MS. CLERK:  Guilty plea form has been

7   executed, Your Honor.

8   THE COURT:  Ms. Rottenborn, did you have a

9   proffered facts to which Mr. Thomas agreed for the

10  record, for the Court's record?

11  MS. ROTTENBORN:  Yes, Your Honor.

12  THE COURT:  Can you tender that, please.

13  MS. ROTTENBORN:  Yes, Your Honor.

14  THE COURT:  If you would show that to Mr.

15  Grimes first.  The Court accepts the statement of facts.

16  Mr. Thomas, it is the finding of the Court

17  in the case of United States versus Brandon Scott Thomas

18  that the defendant is fully competent and capable of

19  entering an informed plea.  That he is aware of the

20  nature of the charges and consequences of his plea of

21  guilty.  And his plea of guilty is a knowing, voluntary

22  and supported by an independent basis in fact as to each

23  of the essential elements of all five offenses.

24  I accept the plea, Mr. Thomas, and he is now

25  adjudged guilty of counts one, six, eight, nine and 13

of the second superseding indictment.

At this time, Mr. Thomas, I am not going to formally accept your plea agreement.  Instead, I'll take your agreement under advisement pending receipt of the presentence report.  I will then consider whether or not to accept the plea agreement.  If I decide to reject the plea agreement, you will then have the opportunity to withdraw your plea and change it to not guilty.

Your case will now be referred to the probation office for development of a written presentence report, which will assist the Court in sentencing you.  This report is important.  That's what I use to determine advisory sentencing guidelines, and I use that information in deciding what range.  If I'm bound by the range, I use that information to decide where within that range you will be sentenced.  So the Court uses that document to make those decisions.  You will be given the opportunity to object, to read that report in advance and object to it.  When you meet with probation office, Mr. Grimes will be present with you, if you would like him to do that.  I encourage you to cooperate with the probation office in preparing for that report.

I remind counsel that written objections to the presentence report must be made within 14 days after

receiving the report and also pursuant to a sentencing

hearing order will be required to file sentencing

memoranda no later than seven days before sentencing.

Counsel, if you cannot meet that deadline, please file

written motions for an extension of time before the

deadline expires.

Also, all victims will be afforded an

opportunity to be heard at the sentencing.  We have a

sentencing date of October 3, 2016 at 10:00 a.m.  I

understand you are in custody and will remain in

custody.  Is that correct, Mr. Grimes?

MR. GRIMES:  It is, Your Honor.

THE COURT:  Counsel, is there any other

matters that we need to take up in this case today?

MS. ROTTENBORN:  No, Your Honor.  Thank you.

THE COURT:  Mr. Grimes?

MR. GRIMES:  Not from the defense, Your

Honor.

THE COURT:  Then we'll adjourn for the day

and, we'll see you back for sentencing on October 3,

2016.

*    *    *    *    *

(Proceedings concluded at 2:55 p.m.)

1

2                    CERTIFICATE OF COURT REPORTER

3            I, Janelle A. Mundy, Notary Public in and

4   for the Commonwealth of Virginia at Large, whose

5   commission expires July 31, 2020, certify that I

6   reported verbatim the proceedings in the United States

7   District Court for the Western District of Virginia, at

8   Roanoke, Virginia, in the captioned cause, heard by the

9   Honorable Elizabeth K. Dillon, Judge of said court, on

10  June 17, 2016.

11           I further certify that the foregoing

12  transcript, to the best of my abilities, constitutes a

13  true, accurate and complete transcript of said

14  proceedings.

15           Given under my hand and notarial seal on

16  this 27th day of October, 2016.

17

18                    _____
                      /s/ Janelle A. Mundy
19                    Notary Public for the
                      Commonwealth of Virginia
20

21

22

23

24

25