IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )   |   |
| ) | |
| v.               ) | Case No. 7:16-cr-00017-4 |
| )  | |
| BRANDON SCOTT THOMAS       ) | |

**MEMORANDUM OPINION**

After pleading guilty to various counts related to drug and sex trafficking, Brandon Scott Thomas was sentenced to 324 months imprisonment. Thomas now moves to vacate his conviction pursuant to 28 U.S.C. § 2255. The government moves to dismiss Thomas' motion. The court will grant the government's motion to dismiss.

I. BACKGROUND

Thomas was one of five defendants charged in a second superseding indictment. He was charged with thirteen total counts of criminal activity: conspiring to sex-traffic at least four victims, actual trafficking of women through fraud, force, and coercion, conspiracy to traffic heroin and methamphetamine, distribution of heroin and methamphetamine, possession of a firearm in furtherance of drug trafficking, running a prostitution enterprise, and multiple counts of obstruction of justice. On June 17, 2016, Thomas pled guilty to conspiracy to engage in drug trafficking, conspiracy to engage in sex trafficking, sex trafficking, and possession of a firearm in furtherance of a drug-trafficking crime.

Thomas' criminal behavior, outlined in the Pre-Sentence Report (PSR) (Dkt. No. 264), included the following:

- routine, malicious beating of one of his female victims (Victim 4) (PSR ¶¶ 17–18, 26);
- distribution of heroin and methamphetamine (PSR ¶¶ 65–66, 74–84, 93–95);

- exploitation of approximately twelve women as prostitutes, many of whom he beat, threatened, defrauded, coerced, or took advantage of sexually (PSR ¶¶ 24, 49, 74);

- manipulation of vulnerable young women by exploiting their heroin addictions in exchange for sexual favors and prostitution services (PSR ¶¶ 44–45, 82, 93);

- possession and brandishing of firearms, despite being a convicted felon, in connection with his drug and sex trafficking (PSR ¶¶ 15, 25, 27, 45, 55, 57, 67, 74, 102);

- armed confrontations with other drug dealers (*id.*);

- threatening to kill various women's families, including one threat to videotape the rape and murder of a woman's children and force the woman to watch the video (PSR ¶¶ 36, 45);

- threatening to rape a federal agent's wife and murder his children (PSR ¶¶ 42, 48, 54); and

- destruction of evidence and subornation of perjury (PSR ¶¶ 21, 64, 101).

On June 7, 2016, Thomas signed a plea agreement pursuant to Rule 11(c)(1)(C), without which Thomas would have had a guideline range of 360 months to life imprisonment. Under the plea agreement, Thomas was guaranteed a range of incarceration between 240 and 324 months, or Thomas could withdraw his plea. It also provided for the possibility of a sentence as low as 200 months with cooperation and substantial assistance (which did not happen). In exchange, the government received an appeal and collateral attack waiver, a written confession from Thomas, and a lengthy sentence that spared Thomas' victims the ordeal of testifying in open court.

A Rule 11 plea hearing was held on June 17, 2016. The court asked Thomas if he fully understood the five counts to which he was pleading guilty, and Thomas responded, "Yes, ma'am." (Plea Hr'g Tr. 7, Dkt. No. 250.) The government listed the elements of the crimes, after which Thomas confirmed that he understood those elements and had talked about them with his attorney. The court advised Thomas of the minimum and maximum penalties and that he

would have to register as a sex offender as a result of his convictions. Thomas indicated that he understood the penalties and the sex offender requirement. (*Id.* at 20–21.)

The government then summarized the most pertinent terms of the plea agreement: Thomas' admission that he was pleading guilty because he was "in fact guilty" and it was in his "best interest" to do so; Thomas' acknowledgement that he was "fully satisfied" with his attorney and his attorney's advice; Thomas' agreement to waive his right to collaterally attack his conviction and sentence, except for claims not waivable by law; Thomas' willing stipulation to a factual basis to support his plea; and Thomas' awareness of the consequences of his plea. (*Id.* at 28.) Thomas indicated to the court that he had initialed each page of the plea agreement, signed it after talking to his attorney, understood it, and that no one forced him to sign the agreement. (*Id.* at 28–29.) Thomas also directly stated that he wanted the court to accept the plea agreement, that he was waiving his right to directly appeal and collaterally attack his plea and sentence, and that he was fully satisfied with the advice and representation of his attorney. (*Id.* at 39–40.)

The court then asked the government to provide a factual basis for the plea, which was read into the record. (*Id.* at 40–45.)

> In the summer of 2015, I and two other individuals called ourselves the 'Bang Brothers.' My street name was 'Gambino.' From July 2015 until my arrest in March 2016, I bought and sold heroin, methamphetamine, and other illegal drugs. I had multiple sources from whom I bought heroin and methamphetamine. One of my sources of methamphetamine was Noel Solett, a/k/a 'Miami.' Another of my sources was SOURCE2. I bought crystal methamphetamine about 20 times from SOURCE2 in January and February 2016. I knew that Solett had other customers, and that Solett was buying and selling ounces of crystal methamphetamine regularly.
>
> I understand that Solett has provided statements to law enforcement that he purchased approximately 1,000 grams of crystal methamphetamine from Tyler Johnson between November 2015 and February 2016. I understand that Tyler Johnson has provided

3

statements to law enforcement, as well as under-oath testimony, that he purchased between 15 pounds (6,803 grams) and 30 pounds (13,607 grams) of crystal methamphetamine from Joshua Voress during that same time period, and that Solett and SOURCE2 were Johnson's two primary customers.

I am a drug addict. From July 2015-February 2016, I sold methamphetamine and heroin on the street, in part to support my drug habit. I also provided methamphetamine and heroin to women who were working as prostitutes. Another member of the Bang Brothers also provided methamphetamine and heroin to women who were working as prostitutes.

During this same time period, I periodically possessed firearms, including but not limited to a revolver and a sawed-off shotgun. These firearms did not belong to me, but I borrowed them from others. I possessed these firearms to improve my image and provide protection when doing drug deals and interacting with others involved in criminal activity.

From approximately July 2015 through February 2016, I, along with other unindicted individuals, ran a prostitution business involving multiple women in Roanoke and Charlottesville, including but not limited to V1, V2, V3, and V4. I got the idea from I.G. who also ran a prostitution business. During this time period, I was destitute and primarily living out of hotels, including the Ramada Inn and Days Inn in Roanoke City. I posted prostitution advertisements on www.Backpage.com through an account on my cell phone that I established using my gmail email address and cell phone number. The customers ('Johns') came to the hotels for in-call services. Generally speaking, I lived off of the money the women earned and the money I made from selling drugs. I used the money to pay for hotel rooms and buy drugs and food. I provided illegal drugs, primarily heroin and crystal methamphetamine, to the women who were working as prostitutes. Solett frequently visited the hotels where I was living. He was aware of my prostitution activities and he also sold or provided methamphetamine to the prostitutes.

I know the true identities of the individuals identified in the Second Superseding Indictment as V1, V2, V3, and V4. From at least September 2015 through February 2016, I was physically abusive to V4 on a regular basis. I slapped, punched, and choked her. On at least one occasion, I held a knife to her throat. On at least one occasion, I tasered her. I beat her when she was pregnant. I beat her in front of others, including women who were prostituting for me.

> I prostituted V4 in both Roanoke and Charlottesville in the fall of 2015 by posting ads of V4 on www.BackPage.com and collecting the proceeds from her prostitution services. I agree that V4 accurately told law enforcement that when she wanted to 'turn down' prostitution acts, she 'got into trouble' with me and that I threatened her so that she would perform the prostitution acts.
>
> In January 2016, V1 worked for me as a prostitute for four days at the Ramada Inn in Roanoke. I initially offered to be her pimp in exchange for 30 percent of the proceeds of her prostitution services. After she began working for me, I ended up with all of the proceeds V1 earned from prostitution activity, which were used for drugs, food, and to pay the hotel bill. I knew V1 had a drug habit, and at times I told her I could not buy heroin until after she performed prostitution activity and made money for the drugs. There were occasions when I threatened to physically hurt her. When she sought to leave the hotel, I threatened her with physical harm if she told anyone about our arrangement. I deleted text messages and other incriminating evidence off her cell phone.
>
> In the fall of 2015 through January 2016, V3 at times worked as a prostitute for me and I made money off her prostitution activities. I knew V3 had a drug habit, and at times I told V3 that I would not be able to get her drugs until after she performed prostitution activity. I also threatened to physically hurt her if she did not 'work' (i.e. prostitute).
>
> I was arrested on March 3, 2016. While I was detained in jail pending trial, I made several phone calls to, and had jail or video visits with, my mother and V4. I requested that they destroy a cell phone that contained evidence of my Backpage account and I asked them to provide false testimony on my behalf if called as witnesses at my trial.

(Stmt. of Facts, Dkt. No. 181.)

After the Statement of Facts was presented, Thomas had the following exchange with the court:

> Court: Mr. Thomas, do you agree that the facts proffered by the United States are true and accurate?
>
> Thomas: Yes, ma'am.
>
> Court: Do you agree that if this matter proceeded to trial, the United States would have proved the facts outlined beyond a reasonable doubt.

Thomas: Yes, ma'am.

Court: Mr. Grimes, is there any dispute about the facts just presented.

Witness: No, Your Honor.

Court: Mr. Thomas, anything else in the summary that is not correct?

Thomas: No, ma'am.

Court: Mr. Thomas, can you tell me in your own words what you did that makes you believe you are guilty of these federal criminal charges.

Thomas: I don't know where to start.

Court: Let's divide it up. The drug conspiracy. Can you tell me what you did that makes you believe that you are guilty of the drug conspiracy?

Thomas: I sold drugs to provide—to support—my drug habit.

Court: Did you agree with others to do that?

Thomas: Yes, ma'am.

Court: Let's talk about possession of a firearm in furtherance of drug-trafficking. What did you do to make you believe you're guilty of that crime?

Thomas: I have had firearms over the past year.

Court: Was that in furtherance to protect you because you were dealing drugs?

Thomas: Yes, ma'am.

Court: Let's talk about the sex-trafficking charges. What did you do that makes you believe you're guilty of the sex-trafficking by force, fraud, or coercion?

Thomas: I posted the ads and provided the female prostitutes and also provided them with drugs.

Court: Did you threaten them?

6

>Thomas: Yes, ma'am.
>
>Court: Did you profit from that?
>
>Thomas: Barely.
>
>Court: Did you profit in some way from that?
>
>Thomas: Yes ma'am.
>
>Court: Are you in fact guilty of what is charged in the five counts of the indictment?
>
>Thomas: Yes ma'am.
>
>Court: Are you pleading guilty of your own free will?
>
>Thomas: Yes ma'am.

(Plea H'rg Tr. 46–48.)

## II.  ANALYSIS

### A.  Section 2255

Under § 2255, a movant may attack his sentence or conviction on the grounds that it was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. *Id.* § 2255(a). The movant bears the burden of proving grounds for collateral relief by a preponderance of the evidence. *See United States v. Cook*, Criminal No. 1:11-cr-188, 2019 WL 921448, at *1 (E.D. Va. Feb. 25, 2019) (citing *Vanater v. Boles*, 377 F.2d 898, 900 (4th Cir. 1967)). In § 2255 proceedings, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." § 2255(b). The record in

this case conclusively establishes that Thomas is not entitled to relief, so the court may address the motion without an evidentiary hearing.

**B. Thomas' Claims**

Thomas alleges the following as grounds for relief: (1) the indictment was defective and violated due process; (2) the indictment contains counts that are multiplicitous; (3) actual innocence; and (4) ineffective assistance of counsel. The court will start with the last claim first.

**1. Ineffective assistance of counsel**

As noted above, Thomas waived his right to appeal or file a collateral attack, but ineffective assistance claims are not subject to such a waiver. *See Barnett v. Quintana*, Case No. 5:18-cv-00279, 2018 WL 7078579, at *13 (S.D.W. Va. Dec. 18, 2018) ("The Supreme Court has made clear that ineffective assistance of counsel claims are generally not procedurally defaulted if not raised in a direct appeal and may be raised in the more appropriate forum of an initial § 2255 petition.") (citing *Massaro v. United States*, 538 U.S. 500, 504 (2003)); *Butler v. United States*, 173 F. Supp. 2d 489, 492–93 (E.D. Va. 2001) (explaining that direct appeal and § 2255 waivers are generally enforceable but subject to certain exceptions, including "where the agreement is involuntary or unknowing, the sentence exceeds the statutory maximum, or the defendant claims the agreement was entered with ineffective assistance of counsel").

A viable ineffective assistance of counsel claim arises when "the counsel's conduct so undermined the proper functioning of the adversarial process that the trial did not result in a just outcome." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). First, counsel's performance must have been deficient, which means that the errors were so serious that he or she was not actually functioning as "counsel" as guaranteed by the Sixth Amendment. *Id.* The level of performance is required to be "below an objective standard of reasonableness" under the prevailing norms of the legal community. *Id.* at 688. "Judicial scrutiny of counsel's

performance must be highly deferential," so "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. That presumption is even greater when counsel's decisions represent strategic, tactical decisions requiring "assessment and balancing of perceived benefits against perceived risks." *United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2004). This presumption must be rebutted by the moving party. *Strickland*, 466 U.S. at 689.

Second, the deficient performance must have prejudiced the defense. *Id.* at 687. In other words, counsel's errors must have been so serious that the defendant was deprived of a fair trial with a reliable result. *Id.* To demonstrate prejudice, there must be a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. If either component of the *Strickland* test is not met, the ineffective-assistance claim will fail. *Id.* at 700. Also, the court need not address both components if there is a deficient showing on either prong. *Id.* at 697.

When a defendant makes a knowing and voluntary guilty plea, that person "waives all jurisdictional defects in the proceedings conducted prior to entry of the plea." *United States v. Moussaui*, 591 F.3d 263, 278 (4th Cir. 2010). Moreover, a guilty plea generally limits collateral attacks to "whether the plea was counseled or voluntary." *Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1295 (4th Cir. 1992). To satisfy *Strickland*'s prejudice prong when the defendant pleads guilty, the defendant must show that but for counsel's ineffective assistance, he would not have pled guilty and would have gone to trial. *Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007). The defendant's subjective belief that he would have chosen trial over a plea is not relevant to this inquiry. *United States v. Fugit*, 703 F.3d 248, 260 (4th Cir. 2012). What matters

9

is "whether proceeding to trial would have been objectively reasonable in light of all of the facts." *Id.* In evaluating post-guilty plea claims of ineffective assistance, a defendant's statements under oath expressing satisfaction with counsel are binding absent "clear and convincing evidence to the contrary." *Fields*, 956 F.2d at 1299. Statements made during Rule 11 proceedings constitute strong evidence that a plea was voluntary. *United States v. DeFusco*, 949 F.2d 114, 119 (4th Cir. 1991).

Thomas argues that his attorney was ineffective because he failed to recognize and challenge certain deficiencies in his indictment. As a result, Thomas urges, he pled guilty to a charge (count 1) that lacked in evidence and was unconstitutional on its face. (§ 2255 Mot. 8, Dkt. No. 348; Pet'r's Mem. 23–24, Dkt. No. 348-1.) Thomas also argues that his attorney was ineffective for not challenging the preclusion of evidence that his victims had been prostitutes prior to working for Thomas under Rule 412 of the Federal Rules of Evidence. (Pet'r's Mem. 52–53.) Thomas is bound, however, by the representations made at his plea colloquy to the effect that he was satisfied with the work done by his counsel. (*See* Plea H'rg Tr. 39–40 ("The court: Mr. Thomas, you have been represented by Mr. Grimes. Are you fully satisfied with the advice and representation given to you in this case by Mr. Grimes? Defendant: Yes, ma'am.").) Thomas has not provided any evidence, much less "clear and convincing evidence," *see Fields*, 956 F.2d at 1299, to undermine or contradict the statements he made at his plea hearing or to suggest that his representations during the plea were untruthful or involuntary. Moreover, Thomas does not advance the correct prejudice argument in this context: that he would have rejected the plea and gone to trial. Such a result would have been unlikely given the mountain of evidence the government had marshaled against him. *See Beck v. Angelone*, 261 F.3d 377, 396 (4th Cir. 2001) (finding that in light of overwhelming evidence of guilt and lack of available defenses, petitioner could not establish prejudice); *Kelly v. United States*, No. 3:03CR200-2-MU,

10

2007 WL 4568973, at *4 (W.D.N.C. Dec. 20, 2007) (noting that the prejudice inquiry is "an objective one based on whether going to trial might reasonably have resulted in a different outcome"). Thus, Thomas cannot establish deficient performance or prejudice under *Strickland*, and his § 2255 motion will be dismissed as to his ineffective assistance of counsel argument.

### 2. Remaining claims

Thomas' remaining claims are subject to the rule of procedural default. *See United States v. Lottier*, Criminal Action No, 7:16-cr-00030, 2020 WL 1815906, at *5 (W.D. Va. Apr. 9, 2020) (procedural default rule applies where defendant has waived his right to appeal via a plea agreement), and cases cited therein. The doctrine of procedural default generally prevents a district court from reaching the merits of § 2255 claims that were not raised on direct appeal unless the movant can show cause and prejudice, or that "a miscarriage of justice would result from the refusal of the court to entertain the collateral attack," such as where a petitioner can demonstrate actual innocence. *Umar v. United States*, 161 F. Supp. 3d 366, 374 (E.D. Va. 2015) (quoting *United States v. Mikalajunas*, 186 F.3d 490, 494 (4th Cir. 1999)). Actual innocence requires "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). In other words, Thomas must demonstrate that he "has been incarcerated for a crime he did not commit." *United States v. Jones*, 758 F.3d 579, 584 (4th Cir. 2014).

In Thomas' brief in support of his motion, Thomas strenuously argues that he is actually innocent of all of the charges to which he pleaded guilty. (Dkt. No. 348-1 at 43–53.) Thomas' conclusory, unsworn assertions do not establish his innocence in the face of his previous, sworn statements attesting to his own guilt. (*See, e.g.*, Plea Hr'g Tr. 47–48 ("What did you do that makes you believe you're guilty of the sex-trafficking by force, fraud or coercion? I posted the ads and provided the female prostitutes and also provided them with drugs. Did you threaten them? Yes, ma'am.").) Therefore, Thomas cannot use actual innocence as a gateway for the

11

court to consider any defaulted claims. *See House v. Bell*, 547 U.S. 518, 536–37 (2006) (explaining that a petitioner "asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt'") (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Thomas also argues that he can avoid procedural default and the appeal and collateral attack waiver because his claims that the indictment was defective and multiplicitous are jurisdictional and cannot be waived. Thomas is incorrect on this point. *See United States v. Lyles*, 9 F. App'x 204, 205 (4th Cir. 2001) ("[A] valid guilty plea constitutes an admission of the material elements of the crime, and waives non-jurisdictional errors, such as defects in the indictment.") (citing *McCarthy v. United States*, 394 U.S. 459, 466 (1969), and *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)); *Crawford v. United States*, Case Nos. 3:13-cv-719-J-34MCR, 3:11-cr-213-J-34MCR, 2016 WL 3615775, at *14 (M.D. Fla. July 6, 2016) ("An allegation that the indictment is multiplicitous is a non-jurisdictional defect that the defendant waives by pleading guilty.") (citing *United States v. Brown*, 752 F.3d 1344, 1347 (11th Cir. 2014)). So long as the indictment "charges the defendant with violating a valid federal statute in the United States Code, it alleges an 'offense against the laws of the United States' and, thereby, invokes the district court's subject-matter jurisdiction." *Brown*, 752 F.3d at 1354 (quoting *Alikhani v. United States*, 200 F.3d 732, 734–35 (11th Cir. 2000)). Such is the case here.

For these reasons, the court finds that Thomas' claims are procedurally defaulted.

## C. Motion to Amend

Thomas also filed a motion to amend his § 2255 motion to add a claim pursuant to a recent Supreme Court decision. (Dkt. No. 372 (discussing *United States v. Davis*, 139 S. Ct.

2319 (2019).)  The court will grant the motion to amend, but the claim is procedurally defaulted for the reasons previously stated in this opinion.[1]

### D. Certificate of Appealability

When issuing a final order adverse to the § 2255 movant, the court must issue or deny a certificate of appealability.  *See* Fed. R. Gov. § 2255 Proc. 11(a).  A certificate of appealability may issue only if the movant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  The movant must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.  *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).

The court declines to issue a certificate of appealability because Thomas has not made a substantial showing of the denial of a constitutional right and reasonable jurists would not find the court's assessment of his claims debatable or wrong.

### III.  CONCLUSION

For these reasons, the court will grant Thomas' motion to amend, deny Thomas' § 2255 motion, grant the government's motion to dismiss, and decline to issue a certificate of appealability.  The court will issue an appropriate order.

Entered: June 4, 2020.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge

---

[1] In *Davis*, the Court held that the residual clause definition of a violent felony in 18 U.S.C. § 924(c)(3), which provides for a mandatory minimum sentence based on using, carrying, or possessing a firearm in connection with a federal crime of violence, was unconstitutionally vague.  139 S. Ct. at 2336.